NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-364
25-P-365

COMMONWEALTH

vs.

SAMANTHA L. RIVERA (and a companion case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

These two cases involve orders of a judge of the District Court allowing motions to suppress evidence seized during a search authorized by a search warrant.  The Commonwealth timely filed notices of appeal in both cases, and its application for leave to appeal from the orders was allowed by a single justice of the Supreme Judicial Court, who directed that these appeals proceed here.  We affirm the orders.

The judge concluded, and the defendants argue here, that the lengthy search warrant affidavit failed to establish probable cause for the search it authorized.  We review the

_____

[1] Commonwealth vs. Leslie Rios-Colon.

sufficiency of a search warrant application de novo, as whether it can support a finding of probable cause is a question of law. See Commonwealth v. Tapia, 463 Mass. 721, 725 (2012).  Review of the sufficiency of a warrant "always begins and ends with the 'four corners of the affidavit'" (citation omitted). Commonwealth v. O'Day, 440 Mass. 296, 297 (2003).  The details of the investigation and the contents of the search warrant affidavit and the search warrant are well known to the parties and will not be repeated here, except as necessary in our discussion below.

The search warrant itself authorized a search at "44/46 Sterling St (3rd FLR), Springfield, MA."  It authorized a search for "Cocaine, a Class B substance, Records, Proceeds.  See Addendum A which is incorporated herein by reference."  Addendum A identifies a number of items.  The first is "Cocaine, a Class 'B' substance, which may be present and/or any controlled substances which may be present or which has been manufactured, delivered, distributed, dispensed, acquired, or held in violation of Chapter 94C of the Massachusetts General Laws."

The defendants argue that because the affidavit does not state what drug the Commonwealth's confidential informant (CI) purchased from defendant Rivera during controlled purchases and does not describe any evidence that Rivera possessed or sold specifically cocaine, there was no probable cause to search for

2

cocaine.  See Commonwealth v. Padilla, 105 Mass. App. Ct. 138,
147 (2024).

The defendants also argue that the affidavit did not
support a conclusion that there was probable cause to believe
that defendant Rivera was using the third-floor apartment at the
targeted address, rather than some other apartment in the
building, sufficient to support a search of that apartment.
Because we conclude the defendants are correct about this second
argument, we need not address the first.

When a residence is searched, there must be probable cause
to believe "that evidence connected to the crime will be found
on the specified premises."  See Commonwealth v. Donahue, 430
Mass. 710, 712 (2000).

The affidavit in this case runs to over twenty-seven pages.
It is needlessly redundant and it contains an enormous amount of
irrelevant boilerplate language.  As relevant here, though, the
affidavit describes 44/46 Sterling Street (44/46) as a two-
family home.  It states that 44 Sterling Street refers to the
first floor of the residence and 46 refers to the second.  It
states that in the front, there are two doors.  The door marked
"44" leads to the first floor and the door marked "46" leads to
the second floor.  It states that there is another door on the
left side of the residence, the "driveway side."  The affidavit
states that that door has "an independent doorbell to the third

3

floor," but that it is "believed to be a common door that has access to both the first and second floor," as well as being "the only entrance that leads directly to the third floor."

The affidavit describes Rivera twice being called by the CI seeking to purchase narcotics.  With respect to the first time, the affidavit describes Rivera leaving 44/46, though it does not say by what door, and driving a car owned by defendant Rios-Colon directly to a controlled purchase at a prearranged location where narcotics were delivered to the CI.  With respect to the second time, the affidavit describes Rivera arriving at 44/46 in the car, leaving it, entering the left side door, emerging later from it, getting back in the car and driving directly to the controlled purchase.  In the case of a third controlled purchase, it states that police observed Rivera leave the controlled purchase and go directly to 44/46, again entering through the left side door.

The affidavit also states that Rivera was never seen interacting with any people living on the first or second floor, but it does not describe the presence of any such people at any such point when she was seen at the property.

Although the affidavit states that Rivera's self-reported residential address obtained from a government database was on Liberty Street, it also sets forth that "[t]he [CI] stated that [defendant Rivera] resides at 44/46 Sterling Street (TARGET

4

STERLING ADDRESS) which was corroborated by investigators." But it describes no basis for the CI's knowledge of this, and it describes no corroboration except the three visits to the address described above.[2] And it says nothing about the third-floor apartment. Indeed, the Commonwealth in its brief refers to 44/46 as "defendant Rivera's apparent sometime residence."

The affidavit also says Rios-Colon "also has been observed by investigators residing at TARGET STERLING ADDRESS," again without mentioning the third floor, but it includes no facts supporting that conclusion. It does not mention Rios-Colon ever appearing at 44/46 or having any other connection to it. The Commonwealth does not rely on Rios-Colon living at 44/46. Indeed, it never mentions this claim.

The affidavit may well provide probable cause to believe Rivera was distributing drugs, and further that drugs, proceeds, or records would be found somewhere at 44/46. It does not, however, provide probable cause to believe they would be found on the third-floor premises (or for that matter specifically in the first- or second-floor units, numbers 44 and 46 respectively). It recognizes that no one, neither the CI nor anyone else, ever said anything about the third-floor apartment

---

[2] The application form itself asserts that the third floor for which the warrant was sought "is occupied by and/or in possession of" Rivera and Rios-Colon. But nothing in the affidavit even suggests that Rios-Colon resided there.

5

at 44/46.  Indeed, the Commonwealth argues only that the back door had "its own doorbell, which was for the third floor," that Rivera did not interact with first- or second-floor residents, and that "[f]rom this the investigators inferred that Rivera used a separate, third-floor apartment."

But the fact that the driveway entrance to the building had a doorbell for, and the only separate entrance to, the third floor does not create probable cause to believe that is where Rivera went when she entered the door.  The affidavit does not describe her using the doorbell, and it states that the back entrance also gave access to the first- and second-floor apartments.  And as described above, there is no evidence of the presence of any resident of the first or second floor.

The affidavit describes no other evidence linking Rivera to the third-floor apartment.  It does not describe obtaining or trying to obtain utility records, for example, or engaging in surveillance to see, for example, what lights went on in any case in which Rivera returned to the building to determine what apartment she had gone to, or plans for the building or surveillance to see the building's layout.  There was no description of any movement, or anything observed through the windows of the third floor or, for that matter, either of the other two floors, at any time.  Cf. Commonwealth v. Treadwell, 402 Mass. 355, 361 (1988) (neither informant information nor

6

police observations of exterior of building established probable cause as to specific apartment to be searched in multiunit dwelling). Contrast Commonwealth v. Phillips, 495 Mass. 491, 504 (2025) (sufficient evidence connecting defendant to apartment included registry of motor vehicle records and defendant's admission to staying at residence); Commonwealth v. DeJesus, 439 Mass. 616, 627 (2003) ("That the keys [seized from the defendant] fit the locks [of the target residence] fully corroborated the information provided by the informant and provided a nexus between the earlier drug transaction involving the defendant and the apartment to be searched"); Commonwealth v. Ortiz-Peguero, 51 Mass. App. Ct. 90, 97 (2001) (defendant's statement that he rented target apartment and his possession of keys to apartment were sufficient to establish nexus between defendant and apartment).[3]

In the absence of probable cause articulated in the affidavit to support the conclusion that defendant Rivera was

---

[3] We need not address the consequence of a circumstance in which safety concerns may limit the ability of the police to conduct surveillance necessary to determine which apartment was being utilized by the alleged drug dealer, as there is no such evidence in this affidavit. See Commonwealth v. Ponte, 97 Mass. App. Ct. 78, 85 (2020). In this case, where no attempt was made to determine by other means whether defendant Rivera was linked to any particular apartment in the building, there is not even any indication that surveillance would have been the only possible way for the police to investigate the question.

dealing drugs from, resided in, or was otherwise connected to the third-floor apartment at 44/46, a warrant for the search of that apartment should not have issued.

The orders allowing the motions to suppress are affirmed.

<u>So ordered</u>.

By the Court (Rubin, Sacks & Smyth, JJ.[4]),

Clerk

Entered:  July 1, 2026.

---

[4] The panelists are listed in order of seniority.